UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GEORGE EARL POGUE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:13-CV-4702-B |
| § | |
| CITY OF DALLAS, TEXAS, DALLAS § | |
| COUNTY, OFFICER JASON § | |
| AROZAMENA, and OFFICER LOUIS § | |
| PACHECO, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Dallas' Motion Pursuant to Rule 12(b)(6) to Dismiss Plaintiffs' Claims Against it in Plaintiffs' Original Complaint (doc. 14), which was filed on April 14, 2014. For the reasons stated below, Defendant's Motion is **GRANTED.**

## I.

## BACKGROUND[1]

This case arises out of a traffic stop and arrest in Dallas, Texas. Plaintiff George Earle Pogue has sued Defendants the City of Dallas, Dallas County, Officer Jason Arozamena, and Officer Louis Pacheco pursuant to 42 U.S.C. §§ 1983 and 1988 for alleged violations of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments of the Constitution. Plaintiff alleges Defendants Arozamena and Pacheco committed numerous constitutional violations including: "(1)

---

[1] The Court draws its factual account from the allegations contained in Plaintiff George Earl Pogue's Original Complaint (doc. 1), as well as from the attachments and documents incorporated therein by reference. *See Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

- 1 -

illegal/unlawful arrest and prosecution; (2) illegal/unlawful excessive force; (3) illegal/unlawful seizure; (4) unlawful search; (5) failure to render medical aid; (6) racial profiling; and (7) illegal/unlawful detention." Compl. 13. In addition, Plaintiff claims that the City of Dallas is liable because it "authorized, permitted, and tolerated" various customs and practices involving unconstitutional use of force, search, arrest, and detention by members of the Dallas County Police Department, as well as "unconstitutional use of improper and dirty clothing and or [sic] failing to provide arrestees and pretrial detainees with needed and required medical treatment." *Id.* at 15–16. Plaintiff asserts a final claim against all defendants for deliberate indifference and deliberate disregard to his constitutional rights "to not be subjected to cruel and unusual punishment and/or not be deprived of life or liberty without due process of law." *Id.* at 17.

A.   *Factual Background*

Plaintiff is an African American male. Compl. 3. At approximately 10:00 p.m. on or about June 19, 2012, he was driving his car home. *Id.* Plaintiff was accompanied by his friend and three-year-old daughter. *Id.* Plaintiff was heading westbound on the 2700 block of Ft. Worth Avenue in Dallas when Defendants Arozamena and Pacheco approached, traveling eastbound on the same street. *Id.* As the cars approached one another, Defendants shined a spotlight on Plaintiff's vehicle, made a U-turn, and began to follow Plaintiff. *Id.* At this time, Defendants did not activate their patrol unit's lights or sirens or otherwise instruct Plaintiff to pull over. *Id.*

Plaintiff made a right turn onto Westmount Avenue and knew that Defendants were behind him, but he did not see any signal lights or hear any sirens to pull over. *Id.* After making another right onto West Colorado Boulevard, Plaintiff noticed the police signal lights behind him. *Id.* Though he was approximately 500 feet from his home, he decided to pull over in a neighbor's

driveway. *Id.* at 3–4. At no time was he attempting to flee. *Id.* at 4.

Because Plaintiff's car windows were defective and could not roll down, he opened his doors with this hands up. *Id.* He remained in the vehicle. *Id.* Though neither he nor his passengers were aggressive or threatened Defendants, Defendants rushed to both sides of the car with guns drawn. *Id.* Defendants proceeded to yell at and use profanity toward Plaintiff. *Id.* In addition, Defendant Arozamena pushed his weapon against Plaintiff's head, while Defendant Pacheco had his weapon drawn on the front of the passenger's neck. *Id.*

Plaintiff was then ordered to the ground. *Id.* He exited the vehicle and made a few slow steps to the right. *Id.* When Plaintiff was approximately five feet away, Defendant Arozamena pulled out his Taser gun and tased Plaintiff without warning. *Id.* Plaintiff fell to the ground, where Defendant Pacheco kicked him in the back and side. *Id.* at 5. Defendant Pacheco also violently struck Plaintiff in the back with his hand/forearm. *Id.* Though Defendant Arozamena observed this attack, he did not intervene or try to protect Plaintiff. *Id.* Defendants next picked Plaintiff up by his arms, causing intense pain and dislocating Plaintiff's shoulder. *Id.* Plaintiff was then tased a second time, handcuffed, and placed in Defendants' vehicle. *Id.* at 5–6. At no time did he resist arrest or otherwise threaten the officers. *Id.*

On their way to the Dallas County jail, Defendants stopped at a 7-Eleven convenience store. *Id.* at 6. They remained there for approximately 30 minutes, during which time they ate, talked on their cell phones, and bragged about tasing Plaintiff. *Id.* When Plaintiff confronted Defendants about their statements, they threatened to call Child Protective Services about Plaintiff's daughter. *Id.*

Defendants then drove Plaintiff to jail, where he was given dirty clothing to wear. *Id.* While

incarcerated, Plaintiff vomited and complained of pain. *Id.* Approximately 24 hours later he posted bond and was released. *Id.*

On or about June 22, 2012, Plaintiff was admitted to Parkland Hospital with multiple musculoskeletal injuries from the June 19, 2012 incident. *Id.* Plaintiff was diagnosed with "arm erythematous left knee." *Id.* Blood tests revealed that Plaintiff had a streptococcus pneumonia infection, which traveled to Plaintiff's left knee. *Id.* Plaintiff was given medicine, discharged, and required to have an IV in his arm for 30 days. *Id.* at 6–7. Plaintiff claims this infection was a result of bacteria from the jailhouse clothing entering the wounds caused by the Taser. *Id.* at 7. Because of the infection, Plaintiff underwent many treatments, including knee surgery. *Id.* Plaintiff also sustained a bone protrusion on his shoulder and two strokes. *Id.* Plaintiff now suffers from severe headaches, weakness in his affected joints, sleep deprivation, poor eyesight, and stress. He also must walk with a cane. *Id.*

B.  *Procedural Background*

On November 26, 2013, Plaintiff filed suit in this Court against Defendants the City of Dallas (the "City"), Dallas County, Officer Jason Arozamena, and Officer Louis Pacheco. Doc. 1. On April 14, 2014, the City filed its present motion to dismiss. Doc. 14. Plaintiff responded on May 7, 2014,[2] and the City replied on May 19, 2014. Docs. 15, 16. The Motion is now ripe for the Court's review.

---

[2] Plaintiff styled his response as "Plaintiff's Response to Defendant's Motion to Dismiss or, in the Alternative, Motion for Leave to Amend Pleading." Doc. 15. This was filed 23 days after Defendant filed its motion to dismiss, which is two days more than the Local Rules provide. *See* Docs. 14, 15; L.R. 7.1(e) ("A response and brief to an opposed motion must be filed within 21 days from the date the motion is filed."). Though Plaintiff states "Local Rules allow three (3) extra days to respond," he provides no authority to support this proposition. Pl.'s Resp. 1 n.1. The Court is unaware of the Rules on which Plaintiff relies and notes that Plaintiff never requested—and never received—leave of Court to file his brief untimely. Nevertheless, the Court will consider the response in its analysis of the present motion.

II.

LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts 'all well-pleaded facts as true, viewing them in light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Erby Contr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

III.

ANALYSIS

Plaintiff argues the City is liable because it "authorized, permitted and tolerated the custom

and practice of specific and actual unconstitutional use of force, search, arrest, and detention by members of the Dallas County Police Department," including Defendants Arozamena and Pacheco. Pl.'s Resp. 2; Compl. 15 at ¶ 9.04. In addition, Plaintiff alleges that the City provided inadequate training and supervision regarding officer conduct, medical treatment afforded to arrestees, use of force, and detention. Pl.'s Resp. 2; Compl. 16 at ¶¶ 10.03–10.04. Finally, Plaintiff claims that the City's actions amounted to deliberate indifference with respect to his constitutional right to be free from cruel and unusual punishment, and his right not to be deprived of life or liberty without due process. Pl.'s Resp. 2; Compl. 17 at ¶ 11.03.

Notwithstanding these allegations, the City insists that Plaintiff's claims cannot stand. In particular, the City argues Plaintiff fails to plead the identity of the City's final policymaker; fails to plead facts sufficient to support an inference of a custom having the force of official policy; and fails to plead facts sufficient to support an inference of legal causation. Def.'s Mot. 6. The City also argues that Plaintiff's claim under the Eighth Amendment cannot stand because there had been no formal adjudication of his guilt when he allegedly required medical care.[3] *Id.* at 15. For these many reasons, the City insists the claims against it should be dismissed.

"Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579

---

[3] Plaintiff concedes within his response brief that, because he was never convicted of a crime, the Eighth Amendment does not apply to his case. Pl.'s Resp. 10. He relies instead on the due process clause of the Fourteenth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (internal citations omitted) ("Pretrial detainees and convicted prisoners, however, look to different constitutional provisions for their respective rights to basic needs such as medical care and safety. The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment . . . . The constitutional rights of a pretrial detainee, on the other hand, flow from both procedural and substantive due process guarantees of the Fourteenth Amendment.").

(5th Cir. 2001). "Official policy usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Davenport v. City of Garland*, 3:09–CV–798–B, 2010 WL 1779620, at *2 (N.D. Tex. April 9, 2010), *adopted by* 2010 WL 1779619, at *1 (N.D. Tex. April 30, 2010), (quoting *Piotrowski*, 237 F.3d at 579) (internal quotation marks omitted)). "[A] policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy." *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). In other words, "[a]ctual or constructive knowledge of a custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam). In addition, there must be a direct causal link between the policy (or custom) and the constitutional violation. *See Piotrowski*, 237 F.3d at 580. Thus, to state a claim for municipal liability a plaintiff must plead facts from which the court could reasonably infer: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotation marks omitted).

Regarding the first element, Plaintiff repeatedly refers to improper policies and customs of the Dallas County Police Department, but nowhere identifies an *official* policy responsible for Defendants' allegedly unconstitutional conduct. *See, e.g.*, Compl. 15. The Fifth Circuit has made clear "that each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or

unconstitutional." *Piotrowski*, 237 F.3d at 579–80. Absent a clearly-identified official policy, the Court must determine whether Plaintiff has pleaded sufficient facts to support a reasonable inference of a custom that caused his constitutional rights to be violated.

A custom is a "'persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Piotrowski*, 237 F.3d at 579 (quoting *Webster*, 735 F.2d at 841). Plaintiff states that Defendants acted pursuant to customs regarding "illegal arrest, illegal detention, illegal prosecution[,] excessive force," and illegal medical care. Compl. 10. Plaintiff further asserts that certain "customs and policies were so widespread as to have the force of law," including profiling African Americans; using excessive force against citizens, particularly African Americans; making false accusations against citizens; and providing dirty jail clothing to arrestees and detainees. *Id.* at 11. Regrettably, Plaintiff neglects to include facts to support these allegations. Indeed, the only facts Plaintiff provides are with respect to his specific encounter with Defendants. However, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy" as required for municipal section 1983 liability. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984). Indeed, "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581.

To be sure, Plaintiff does state that "Dallas County citizens" have made "several complaints" about Defendant Pacheco for racial profiling, including for a similar incident that resulted in the death of another African American male. Compl. 10–11. Plaintiff also states that the City was aware of "interactions" between Defendant Pacheco and African Americans, as well as the risk he would

cause serious harm to African American arrestees. *Id.* at 11. Plaintiff's allegations still are not enough to support an inference of municipal liability for inadequate police conduct. "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Peterson v. City of Forth Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Webster*, 735 F.2d at 845). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). Though the Court takes seriously Plaintiff's allegation that there had been "several complaints" about Defendant Pacheco, Plaintiff has failed to provide sufficient allegations to support an inference of "a pattern of abuses that transcends the error made in a single case." *Piotrwoski*, 237 F.3d at 582; *see Weathered v. Dallas Cnty.*, No. 3:10–CV–781–B–BK, 2010 WL 4781300, at *3 (N.D. Tex. Nov. 3, 2010), *adopted by* 2010 WL 47830024 (N.D. Tex. Nov. 23, 2010), (emphasis in original) ("A county does not incur section 1983 liability for injuries caused solely by its employees and cannot be held liable under section 1983 on a *respondeat superior* theory.").

Similarly, Plaintiff has not sufficiently pleaded municipal liability for any alleged failure to train or supervise officers. "[I]n limited circumstances, a municipality can be held liable for failure to train its police officers." *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). However, there must be a "direct causal link between the municipal policy and the constitutional deprivation," and the plaintiff must "establish that the city consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens. *Id.* at 795–96. Here, Plaintiff offers no more than conclusory remarks to demonstrate the

City's liability. For example, Plaintiff alleges that "[t]he supervision and training by City of Dallas . . . , regarding its employees and officers, medical treatment, the use of force, arrest and detention, in particular for its officers, amounted to deliberate indifference." Compl. 10 at ¶ 6.29. Similarly, Plaintiff avers that "Dallas County and City of Dallas and their supervisors of the individual defendants failed to train and/or supervise the defendants who violated the rights of Plaintiff," *id.*, and "[i]t was a policy and/or custom of Dallas County and the City of Dallas to inadequately train and supervise his [sic] officers . . . ." *Id.* at ¶ 6.32. Absent from these allegations are facts to support an inference that the City failed to adequately train or supervise its officers regarding any of the constitutional violations Plaintiff alleges. *See Weathered*, 2010 WL 4781300, at *5 (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000)) (noting that plaintiff "provides no factual specificity whatsoever, and the Court cannot 'accept as true [his] conclusory allegations or unwarranted deductions of fact.'").

Even if Plaintiff had sufficiently pleaded the existence of these customs, his pleading would still be deficient for failure to identify the City's final policymaker. "A policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." *Peterson*, 588 F.3d at 847 (internal quotation marks omitted). "Thus, a plaintiff must show the policy was promulgated by the municipality's policymaker. There is no 'de facto' final policymaking authority." *Id.* Plaintiff's complaint is silent with respect to the City's final policymaker and says only that "[a]lthough not formally approved by an appropriate *decision-maker*, including the Dallas City Council, Chief of Police, Dallas County Sheriff and County Judge, the same customs and policies were so widespread as to have the force of law." Compl. 11 at ¶ 6.31 (emphasis added). Plaintiff attempts to explain this

shortcoming in his response brief by stating that, "[a]lthough Plaintiff does not use the term 'policymaker,' he identifies the individuals and entities which are policymakers within the City of Dallas system of government, i.e., 'Dallas City Council, Chief of Police . . . .'" *Id.* at 8 (ellipsis in original). Regrettably, both Plaintiff's pleading and subsequent explanation are lacking.

The Supreme Court and the Fifth Circuit have emphasized that, in the context of section 1983 claims, courts must be sensitive to the distinction between decisionmakers and final policymakers.

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986) (internal citations omitted); *see Jett*, 7 F.3d at 1246 (emphasis in original) ("In *Pembaur* and *Praprotnik* the Court carefully distinguished between those having mere *decisionmaking* authority and those having *policymaking* authority."). In other words, a government official may have discretion over some decisions without also being the official responsible for establishing policy with regard thereto. *Pembaur*, 475 U.S. at 483 n.12. In such a situation, the official's decisions would not give rise to municipal liability. *Id.*

This is a critical point that Plaintiff seems to miss. Plaintiff argues that he has sufficiently pleaded his case because he identified "Dallas City Council, Chief of Police, Dallas County Sheriff and County Judge" within his complaint and later argued that "[i]t cannot be denied that these entities and individuals are indeed the City's policymakers, in particular with regard to police

matters." Pl.'s Resp. 8. However, Plaintiff has nowhere alleged or demonstrated that the council or any of these individuals had, or were delegated, final policymaking authority with regard to the practices he has alleged. *See Jett*, 7 F.3d at 1246 ("However, that Superintendent Wright may have been delegated the final decision in the cases of protested individual employee transfers does not mean that he had or had been delegated the status of policymaker, much less final policymaker, respecting employee transfers."). It therefore goes without saying that Plaintiff has failed to plead sufficient facts from which the Court could infer that the City's final policymaker was aware of Defendants' allegedly illegal conduct—*to wit*, unconstitutional use of force, search, arrest, and detention; inadequate medical treatment; racial profiling; and provision of unsanitary jail clothing. *See Valle*, 613 F.3d at 541–42 (internal quotation marks and alterations omitted) ("Under the second prong, actual or constructive knowledge of custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.").

Because Plaintiff has failed to satisfy the first two elements necessary to state a claim for municipal liability, the Court need not reach the third regarding causation. Plaintiff's claims against the City for violations of his Fourth, Eighth, and Fourteenth Amendment rights are therefore **DISMISSED WITHOUT PREJUDICE.**

## IV.

## CONCLUSION

For the foregoing reasons, Defendant City of Dallas' Motion is **GRANTED** in its entirety. Plaintiff George Earle Pogue's claims against the City of Dallas are hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiff is permitted to replead within 21 days of this Order. Failure to file an amended pleading will result in a dismissal *with prejudice* of the Plaintiff's claims against the City of

Dallas.

SO ORDERED.

SIGNED: August 4, 2014.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE